IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SOUTHERN ELECTRIC CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 07-0575-CG-C |
| UTILITIES BOARD OF THE CITY OF FOLEY, ALABAMA, d/b/a RIVIERA UTILITIES, et al., | ) ) ) ) | |
| Defendants. | ) ) | |
| UTILITIES BOARD OF THE CITY OF FOLEY, ALABAMA d/b/a RIVIERA UTILITIES, | ) ) ) ) | |
| Defendant/Counter-Plaintiff, | ) ) | |
| vs. | ) ) | |
| SOUTHERN ELECTRIC CORPORATION, | ) ) ) | |
| Plaintiff/Counter-Defendant. | ) | |

## ORDER

This matter comes before the court on the motion for summary judgment filed by defendant, Custom Engineering Solutions ("CES"), against plaintiff, Southern Electric Corporation ("SEC"), and the motion for partial summary judgment filed by SEC against CES. (Docs. 113 and 132). This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. No party disputes personal jurisdiction or venue.

I.  **ALLEGATIONS**

SEC brought this diversity action against defendants, Utilities Board of the City of Foley,

Alabama d/b/a Riviera Utilities ("Riviera") and CES. (Doc. 1). Riviera filed a counterclaim against SEC. (Doc. 10). The court will address the motions for summary judgment between Riviera and SEC in a separate order.

According to the complaint, Riviera hired SEC to provide labor and equipment for the installation of power lines. (Doc. 1, p. 2, ¶ 8). The contract between Riviera and SEC saddled Riviera with the duties of identifying locations to install the utility poles, providing plans for installing power lines, and furnishing all of the materials necessary to complete the project. (Doc. 1, p. 2, ¶ 8).

Riviera, in turn, hired CES to designate where SEC should install the utility poles to which the power lines would be attached. (Doc. 1, pp. 2-3, ¶ 9). The complaint alleges that the locations that CES designated for installation of the utility poles conflicted with a gas line and a fiber optic cable. (Doc. 1, p. 3, ¶ 11). In order to find suitable locations to install the utility poles, CES had to conduct additional surveys, delaying SEC's completion of the project. (Doc. 1, p. 3, ¶ 11). Relocating the utility poles required certain adjustments, which in turn forced SEC to supply additional manpower. (Doc. 1, p. 3, ¶ 12).

In addition to the delays allegedly caused by having to adjust the locations for installation of the utility poles, SEC ran into difficulty in obtaining the materials it needed to complete the job. (Doc. 1, p. 3, ¶ 13). Riviera allegedly did not furnish the materials in a timely manner. Rather, many of the materials were stored roughly 27 miles from the location where they were to be used. (Doc. 1, p. 3, ¶ 13). Other materials were not "in stock," resulting in delay and requiring additional labor, or man hours, from SEC. (Doc. 1, p. 3, ¶ 13).

The complaint brings three counts. The first count is for breach of contract against

Riviera. SEC alleges that Riviera's purported failure to provide materials in a timely fashion and Riviera's change in the plan drawings for installation of the utility poles - which Riviera did through its agent, CES - constitutes a breach of contract. (Doc. 1, p. 4, ¶¶ 16-18). Count Two seeks penalty interest pursuant to ALA. CODE § 8-29-3 (1975), because SEC allegedly was not paid in a timely fashion. (Doc. 1, p. 5, ¶¶ 19-20). Count Three alleges that CES breached a duty of care it owed to SEC when it initially indicated locations for installing the utility poles that conflicted with underground utilities in the area. (Doc. 1, p.5, ¶¶ 21-23).

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56© of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©. The movant bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

As succinctly stated by the Eleventh Circuit:

A factual dispute is genuine only if "a reasonable jury could return a verdict for the nonmoving party." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (citation omitted). The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the district court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Info. Sys. and Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224-25 (11th Cir. 2002). The purpose of summary judgment "is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995), cert. denied sub nom. Jones v. Resolution Trust Corp., 516 U.S. 817 (1995).

> In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." Ryan v. Int'l Union of Operating Engrs, Local 675, 794 F.2d 641, 643 (11th Cir. 1986). There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Blue Cross & Blue Shield v. Weitz, 913 F.2d 1544, 1550 (11th Cir. 1990). Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994)(citing Lazzara v. Howard A. Esser, Inc., 802 F.2d 260, 269 (7th Cir. 1986)), cert. denied, 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

Id. at 599. The "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The failure by the nonmoving party to make a sufficient showing on an essential element of its action entitles the moving party to judgment as a matter of law. Id. at 323.

### III. CES'S MOTION FOR SUMMARY JUDGMENT IS GRANTED IN PART AND DENIED IN PART.

#### A. The Argument on Count Two

Count two brings a claim under ALA. CODE § 8-29-3 (1975). This statute is part of the Deborah K. Miller Act, and is Alabama's version of "prompt-payment acts" enacted in other states. Tolar Constr., LLC v. Kean Elec. Co., 944 So. 2d 138, 142, 147 (Ala. 2006). In relevant part, the statute reads: "[i]f the owner, contractor, or subcontractor does not make payment in

4

compliance with this chapter, the owner, contractor, or subcontractor shall be obligated to pay his or her contractor, subcontractor, or sub-contractor interest at the rate of one percent per month (12% per annum) on the unpaid balance due." ALA. CODE § 8-29-3(d) (1975). The statute provides a remedy "against owners, contractors, and subcontractors, respectively," when they do not provide timely payment. Tolar Constr., 944 So. 2d at 147. CES is not the owner, contractor, or subcontractor that is obligated to pay SEC on the project. (See Docs. 115-2 and 171-2). As such, the summary judgment is **GRANTED** in favor of CES on Count Two.

  B.  **The Arguments on Count Three**

CES seeks summary judgment on count three. It argues that there is no disputed issue of material fact with regard to whether CES breached the applicable standard of care, whether any breach caused damage, and whether SEC can establish that it suffered any damage. The arguments are without merit.

    1.  **The Standard of Care Argument**

CES argues that SEC has not created a genuine issue of material fact with regard to whether CES breached the applicable standard of care.

> Alabama law requires that expert testimony establish the appropriate standard of care that professionals such as architects and engineers must exercise. This standard is based upon the learning, skill, and care ordinarily possessed and practiced by those ordinarily skilled in that profession. When the engineer's actions meet the standard of those skilled and experienced in that profession, the engineer has met his responsibility.

Collins Co. v. Decatur, 533 So. 2d 1127, 1134 (Ala. 1988) (citations omitted).

One of SEC's expert witnesses, Philip Cathey ("Cathey"), was engaged to provide an "opinion regarding whether or not a reasonably prudent engineer would design a project without determining what conflicts, if any, might arise with existing underground utilities [and] whether

5

or not a reasonably prudent engineer with information regarding existing underground utilities would fail to include and/or account for such information in the plans and specifications." (Doc. 171-14, p. 2). Cathey reviewed information that was available to CES and opined that CES did not adhere to the relevant standard of care by designing the project without taking into account the location of various underground utilities about which CES should have generally become aware when it had the area surveyed. (Doc. 171-14, pp. 5-7). CES could have followed "[g]ood engineering practice" by "contacting the owners of the utilities that have been found to secure information about the facilities in the affected area." (Doc. 171-14, p. 5).

CES tries to undercut Cathey's opinion by arguing that there are several acceptable methods CES could have used in its design project, some of which do not include calling utility companies to locate the underground utilities. CES also argues that Cathey could not establish whether calling the utilities would have been effective, because the utilities would not necessarily provide accurate information, if they provided any at all, during the design phase of the project.

CES's first argument, that summary judgment is due because the design method it followed is an acceptable method, must fail. To the extent that the evidence CES produced in support of its motion tends to show that CES followed an acceptable method when it designed the project at issue, CES's evidence is squarely rebutted by Cathey's testimony that CES breached the applicable standard of care when it failed to investigate more thoroughly the location of underground utilities in the area. There is a genuine issue of material fact on this point.

CES's second argument, that summary judgment is due because any efforts it could have

6

made to locate the underground utilities could have been futile, also fails. This argument seeks to undercut one of the factual premises that Cathey uses to support his opinion that CES breached the applicable standard of care. CES's argument is a basis for cross-examination at trial, not a method of establishing that there is no genuine issue of material fact at summary judgment. Quiet Technology DC-8, Inc. v. Hurel-Dubois UK LTD., 326 F.3d 1333, 1344-46 (11th Cir. 2003) (attacks on accuracy of expert opinion, as opposed to its general scientific validity, should be made on cross-examination).

### 2. The Causation Argument

CES argues that SEC cannot establish that any breach of the standard of care by CES caused any damages. See Peters v. Calhoun County Comm'n, 669 So. 2d 847, 849 (Ala. 1995) ("One of the elements of a negligence action is a causal relationship between the defendant's conduct and the plaintiff's injury."); South Coast Properties, Inc. v. Schuster, 583 So. 2d 215, 217 (Ala. 1991) ("Proof of negligence requires the establishment of a duty and a breach thereof that proximately caused damage to the plaintiff."). As CES points out, Buddy Burkes, one of SEC's Rule 30(b)(6) witnesses, testified that he could not attribute a specific amount of delay to CES and that he had not specifically apportioned responsibility for SEC's claimed delay between the two defendants. (Doc. 115-13, pp. 8-9). CES also directs the court to deposition testimony by one of SEC's experts, David Marchman ("Marchman"), in which he says he has not endeavored to assign specific causes to specific delays. Finally, CES asserts that SEC admits part of the delay for which it seeks to recover damages was attributable to its own fault.

SEC responds by pointing out that Marchman opined that CES delayed SEC's progress on the project. (Doc. 171-11, pp. 3-5). Although SEC's response does not attempt to apportion

which part of the delay is attributable to which party, SEC has made a sufficient showing that CES caused delay.

### 3. The Damages Arguments

CES seeks judgment in its favor based on arguments that the calculations SEC uses to ascertain its amount of damages are improper. In Long-Lewis v. Webster, 551 So. 2d 1025 (Ala. 1989), the defendants appealed a jury's determination of damages in a fraud action. Id. at 1026. Affirming the trial court's decision not to disturb the jury's damages award, the Supreme Court of Alabama said the following about a plaintiff's obligation to prove damages with sufficient precision.

> The amount of damages must be established with reasonable certainty. However, reasonable certainty is sufficient to support an award of damages; and absolute certainty is not required. So it is sufficient if a reasonable basis of computation is afforded, even though the result is only approximate; what is required is that evidence of certainty as the nature of the particular case permits should be produced. Direct evidence as to the amount is not necessary in all cases.
>
> Damages are not uncertain for the reason that the loss sustained is incapable of proof with the certainty of a mathematical demonstration, or is to some extent contingent and not capable of being accurately determined. It is not a sufficient reason for disallowing damages claimed that a party can state their amount only proximately; it is enough if from proximate estimates of witnesses a satisfactory conclusion can be reached. It is sufficient if there is such certainty as satisfies the mind of a prudent and impartial person.

Id. at 1027 (quoting 25 C.J.S. Damages § 26(c), pages 678-683 (1966)) (internal quotations omitted). Applying the foregoing standard, the court affirmed the trial court's decision to uphold the jury's award because "the plaintiffs did set forth evidence of reasonable expenditures incurred and reasonable efforts at mitigation, which provided the jury a basis upon which their damages could be assessed." Id. See also Ramsey v. Avco Fin. Servs., 646 So. 2d 142, 143 (Ala. Civ. App. 1994) (parties may recover all damages if "they flow directly and naturally from

the breach and are not speculative.").

The parties argue over whether certain methods of calculating damages are legally appropriate. None of the authority the parties cite, all of which comes from outside of Alabama, justifies judgment in favor of CES on Count Three, however, because none of the authority establishes that SEC is unable to present a jury with facts based on which the jury can award damages against CES with reasonable certainty. Simply put, there is a genuine issue of material fact as to whether, and to what extent, SEC suffered damages, which is sufficient for SEC to overcome summary judgment.

## IV. SEC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST CES IS GRANTED IN PART AND DENIED IN PART.

### A. The Duty Argument

In order for SEC to recover against CES, SEC must establish that CES owed it a duty of care. Albert v. Sui-Yean Hsu, 602 So. 2d 895, 897 (Ala. 1992). The question of whether CES owed SEC a legal duty is a question for the court. Id.

Although CES vigorously objects to the conclusion that it owed a legal duty to SEC, CES's arguments primarily go to the issues of breach, causation, and damages. The arguments do not go to the issue of whether CES owed SEC a duty which could be breached. As SEC correctly argues, an engineer such as CES can owe a legal duty in tort to a contractor like SEC.

> [B]y entering into a contract with A, the defendant may place himself in such a relation toward B that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that B will not be injured. The incidental fact of the existence of the contract with A does not negative the responsibility of the actor when he enters upon a course of affirmative conduct which may be expected to affect the interests of another person.

Berkel & Co. Contractors, Inc. v. Providence Hospital, 454 So. 2d 496, 502 (Ala. 1984) (quoting

9

W. Prosser, Law of Torts § 93 at 622 (4th ed. 1971)). See also Cincinnati Ins. Co. v. Barber Insulation, Inc., 946 So. 2d 441, 445-47 (Ala. 2006) (explaining Providence Hospital).

CES entered into a contract with Riviera to create engineering plans that SEC was expected to implement. (Doc. 132-3, pp. 14-17; Doc. 132-4, p. 6; Doc. 132-5, pp. 3-8). Consequently, this aspect of SEC's motion for partial summary judgment is **GRANTED**. When CES performed the engineering work by contract with Riviera, it clearly "enter[ed] upon a course of affirmative conduct which may be expected to affect the interests of another person," i.e., SEC. Providence Hospital, 454 So. 2d at 502. Under Providence Hospital, such conduct creates a legal duty for purposes of SEC's engineering malpractice claim.

### B. The Measure of Damages Argument

SEC also asks the court to rule that, if SEC establishes CES's liability on Count Three, then "SEC is entitled to recover all damages shown to have been proximately caused by CES'[s] breach." (Doc. 133, p. 7). This aspect of the motion appears to call on the court to state the law of damages under Alabama law, without specifically applying it to this case, or asking for judgment on any element of the case. The jury will be instructed on Alabama's law of damages. Accordingly, this aspect of SEC's motion is **DENIED**

**DONE** and **ORDERED** this 5th day of February, 2009.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE